## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH PUSKARIC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-991-HE |
| | ) |
| ROBERT PATTON, individually and in his | ) |
| Official Capacity as Director of the Oklahoma | ) |
| Department of Corrections; DIANA BILBO, | ) |
| individually and in her Official Capacity as | ) |
| Captain at the Beckham County Detention Center; | ) |
| and SCOTT JAY, individually and in his | ) |
| Official Capacity as Sheriff of Beckham County, | ) |
| and DOES, Other unknown Persons or Person | ) |
| Having Responsibility or Involvement in the | ) |
| Circumstances of the Violation of the Civil Rights | ) |
| Of Plaintiff, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Joseph Puskaric, a state prisoner appearing through counsel, brings this civil rights action pursuant 42 U.S.C. § 1983 alleging defendants have been deliberately indifferent to his serious medical needs. The matter has been referred by Chief United States District Judge Joe Heaton for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Defendants Diana Bilbo and Scott Jay (Beckham County Defendants) have filed a joint Motion to Dismiss and Brief in Support. [Doc. No. 9]. Plaintiff responded to the Beckham County Defendants' Motion to Dismiss (Response) [Doc. No. 11]. The Beckham County Defendants replied to Plaintiff's Response (Reply) [Doc. No. 12].

Defendant Robert Patton filed a separate Motion to Dismiss [Doc. No. 10] seeking dismissal of both the individual and official capacity claims against him.[1] Plaintiff did not respond.

The Motion to Dismiss of the Beckham County Defendants should be granted as to the claims against Defendant Jay and denied as to the individual capacity claims against Defendant Bilbo. The official capacity claims for monetary damages against the Director of the DOC should be dismissed as barred by the Eleventh Amendment, and the claim for prospective injunctive relief against this defendant should be denied as moot. The Court should also dismiss the individual capacity claims against Defendant Patton because Plaintiff has included no allegations demonstrating Defendant Patton personally participated in any alleged constitutional violations.

## I.     Background

Plaintiff filed his complaint on September 10, 2015, alleging Defendants Bilbo and Jay were deliberately indifferent to his serious medical needs while he was a pretrial detainee incarcerated in the Beckham County Jail. [Doc. No. 1]. Although Plaintiff's Complaint is vague on this point, it appears from the docket sheet in Plaintiff's criminal case in the Beckham County District Court, Case No. CF-2013-185,[2] (Criminal Docket), that Plaintiff was arrested and incarcerated in the Beckham County Jail on September 3, 2013. [Criminal Docket] at 9. Plaintiff alleges that he "first suffered from a stroke while in the custody of Defendant Bilbo in

---

[1] Defendant Patton is the former Director of the Oklahoma Department of Corrections (DOC). On July 7, 2016, Joe M. Allbaugh, was appointed to the position of Director of the DOC. Thus, Joe M. Allbaugh is substituted for Defendant Patton as to the official capacity claims asserted against Defendant Patton. *See* Fed. R. Civ. P. 25(d). However, Defendant Allbaugh is not substituted as to the individual capacity claims asserted against Defendant Patton.

[2] For purposes of creating a time line of events leading to this action, the undersigned takes notice of the docket sheet for Plaintiff's criminal case in the Beckham County District Court, CF-2013-185. The docket sheet may be viewed at www.oscn.net.

the Beckham County Jail[.]" [Doc. No. 1] at 2. Plaintiff further contends "he did not receive treatment in a timely manner, which exacerbated his condition." *Id.* Plaintiff states he "complained of his condition for days and was given no medical care." *Id.* Plaintiff does not reveal the exact day he suffered the stroke or what steps he took to try to alert the Beckham County Defendants of his condition. But he appeared in court before Judge Roper on September 10, 2013, at which time the judge immediately recognized his need for medical care and ordered that he be taken to a hospital. *Id.*; [Criminal Docket] at 9. He was released on medical bond. *Id.*

Just how Plaintiff got to Phoenix, Arizona, is unclear. Plaintiff contends he went there for medical treatment and rehabilitation. [Doc. No 1] at 2. But on March 26, 2014, Plaintiff missed a scheduled appearance before the Beckham County District Court. The court ordered his bond to be forfeited, allowed Plaintiff's appointed attorney to withdraw, and issued a bench warrant for Plaintiff's arrest. [Criminal Docket] at 11. According to the Complaint, Plaintiff was arrested pursuant to the bench warrant on April 7, 2014, in the parking lot of a nursing home in Sun City, Arizona, where he had been receiving treatment for the aftermath of the first stroke. [Doc. No. 1] at 2.

Plaintiff states he suffered another stroke when Arizona officers arrested him. The arresting officers recognized Plaintiff's urgent need for medical care and immediately took him to a hospital. *Id.* Thereafter, Plaintiff was extradited to Oklahoma and incarcerated in the Beckham County jail. Plaintiff contends he received no medical or rehabilitative services while he was awaiting trial. [Doc. No. 1] at 3-4.[3]

Plaintiff appeared before the Beckham County District Court on November 19, 2014. [Criminal Docket] at 12. The Beckham County District Court granted Plaintiff's application for

---

[3] Plaintiff contends he has "a substantial and urgent need for continuing physical medical health care and rehabilitative therapy[.]" [Doc. No. 1] at 2-3.

3

determination of competency on January 21, 2015. *Id.* At a hearing on April 1, 2015, the Beckham County District Court found Plaintiff incompetent to stand trial and ordered that he be placed in the custody of Eastern State Hospital. [Criminal Docket] at 13. Plaintiff states he was not actually moved from the Beckham County jail, however, until July 2015. [Doc. No. 1] at 3. Plaintiff alleges that, pursuant to Defendant Bilbo's order, he did not receive any medical treatment or rehabilitative therapy while he was awaiting transport. *Id.*

Plaintiff next appeared before the Beckham County District Court on January 19, 2016. [Criminal Docket] at 16. The parties stipulated to Plaintiff's competency, and Plaintiff waived his right to jury trial. *Id.* After pleading guilty on February 22, 2016, Plaintiff's conviction became final on June 15, 2016. [Criminal Docket] at 18. The criminal docket sheet is silent as to where Plaintiff was to be incarcerated.[4]

Plaintiff contends the defendants have violated his Eighth Amendment and due process rights to be free of cruel and unusual punishment. He seeks monetary damages as well as prospective injunctive relief "from continuation of policies, practices and customs that deny or withhold medical care from Plaintiff." [Doc. No. 1] at 14. Alternatively, Plaintiff asks this Court to appoint "a receiver of the medical care system of the Department of Corrections only insofar as it is responsible for the care of the Plaintiff to ensure adequate compliance with necessary rehabilitative and occupational therapy requirements." *Id.*

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[4] A search of offenders at the Oklahoma Department of Corrections website shows a reception date for Plaintiff of February 22, 2016, but lists Plaintiff's current status as "inactive." http://docapp065p.doc.state.ok.us/servlet/page?_pageid=394&_dad=portal30&_schema=PORTAL30&doc_num=739769&offender_book_id=468220. (Last Accessed August 10, 2016.)

4

U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."

Moreover, "[b]ecause vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676 (2009).

### III. Analysis

#### A. Motion to Dismiss Claims Against Director of DOC

On January 29, 2016, Counsel for the Director of the DOC moved for dismissal of Plaintiff's official capacity claims pursuant to Fed. R. Civ. P. 12(b)(1), based on the doctrine of Eleventh Amendment sovereign immunity, and for dismissal of the claims against Defendant Patton in his individual capacity pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. [Doc. No. 10].

Plaintiff did not respond to the Motion to Dismiss and has therefore confessed it. L.Cv.R. 7.1(g). Notwithstanding the lack of response, however, the Complaint must be evaluated to determine whether it states a claim. *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th

Cir. 2003) ("[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted.").

### 1. Official Capacity Claims for Monetary Damages

Claims for damages against a state employee sued in his official capacity are construed as claims against the state and are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U .S. 159, 165–68 (1985) (a suit against an individual state employee acting in an official capacity is properly treated as a suit against the state itself and is barred under the Eleventh Amendment); *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (Eleventh Amendment sovereign immunity barred § 1983 claims against prison officials in their official capacities). While a State may waive the defense of sovereign immunity, the State of Oklahoma has not waived its sovereign immunity defense against § 1983 actions brought in federal district court cases. *See Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994). The Eleventh Amendment forecloses any claim for monetary damages against Defendant Director of the DOC in his official capacity, and these claims should be dismissed with prejudice.

### 2. Claims for Prospective Injunctive Relief

The Motion to Dismiss Plaintiff's official capacity claims seeking prospective injunctive relief against the Director of the DOC should also be granted. Although Plaintiff states that he "is incarcerated under the control of the Department of Corrections," [Doc. No. 1] at 8, Defendant contends that "[a]s a pretrial detainee Plaintiff [was] not actually in the custody of ODOC." [Doc. No. 10] at 4. The Complaint was filed on September 10, 2015, and the final judgment and sentence, pursuant to Plaintiff's guilty plea, was not entered until June 15, 2016.

[Criminal Docket] at 18. Accordingly, Plaintiff remained a pretrial detainee at all times relevant to his Complaint.

But out of an abundance of caution, this Court gave Plaintiff the opportunity to show cause as to why his claims for prospective injunctive relief against the Director of the DOC should not be dismissed as moot. [Doc. No. 13]. Plaintiff did not respond to the order to show cause.

When prospective equitable relief is requested, the requesting party must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law. *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (*citing O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea*, 414 U.S. at 495–96. In this case, Plaintiff's request for prospective injunctive relief is moot because Plaintiff is not in the custody of the DOC. "The crux of the mootness inquiry in an action for prospective relief is whether the court can afford meaningful relief that will have some effect in the real world." *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (internal citations and quotations omitted). Because Plaintiff is not now in the custody of the DOC, granting Plaintiff the prospective injunctive relief he seeks, would have no "real world" effect. Therefore, Plaintiff's claims for prospective injunctive relief against the Director of the DOC in his official capacity should be denied as moot.

### 3. Individual Capacity Claims against Defendant Patton

The individual capacity claims against Defendant Patton should be dismissed based on Plaintiff's failure to plead facts demonstrating Defendant Patton's personal participation in any violations of Plaintiff's rights. It is undisputed that supervisory liability cannot be established

solely on a theory of respondeat superior. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *see also Robertson v. Sichel*, 127 U.S. 507, 515–516 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, at 676. Plaintiff has wholly failed to allege any facts demonstrating that Defendant Patton personally participated in any acts leading to violation of Plaintiff's civil rights.

### B. Beckham County Defendants' Motion to Dismiss

The Beckham County Defendants have moved for dismissal of the official capacity claims against them as well as the individual capacity claims. The latter is based on Plaintiff's alleged failure to state a claim upon which relief may be granted and his alleged failure to assert plausible facts demonstrating that they personally participated in the constitutional injury. The Beckham County Defendants also assert the affirmative defense of qualified immunity and contend Plaintiff's action is barred by the statute of limitations.

#### 1. Official Capacity Claims

Unlike official capacity claims asserted against a state employee, Eleventh Amendment Immunity does not bar official capacity claims asserted against a municipal employee. The Supreme Court has outlined the elements necessary to state an official-capacity claim against a municipal employee:

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes"

> a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (*citing Monell*, 436 U.S., at 665–683). They are not vicariously liable under § 1983 for their employees' actions. *See id.* at 691; *Canton v. Harris*, 489 U.S. 378, 392 (1989); *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).

*Connick v. Thompson*, 563 U.S. 51, 60 (2011).

Plaintiffs who seek to impose liability on local governments under § 1983, however, must prove that "action pursuant to official municipal policy" caused their injury. *Monell* at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 60–61. "These are 'action[s] for which the municipality is actually responsible.'" *Id.* (*quoting Pembaur*, 475 U.S. at 479–480).

Plaintiff alleges Beckham County has a "policy of denial of medical care to inmates such the Plaintiff suffering from unexpected medical conditions because those inmates were 'not having any problems at booking.'" [Doc. No. 1] at 11. Plaintiff alleges that Defendant Bilbo made such a statement, but he does not offer the context of the statement. Moreover, the fact that this statement was made does not prove the existence of a "policy" to deny medical care to pretrial detainees unless they show signs of a medical problem at booking. Plaintiff offers no facts, other than the facts describing his own unfortunate circumstances, to demonstrate a policy such as the one described in his Complaint. His "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Plaintiff's unsupported allegations against the Beckham County Defendants in their official capacities do not state a claim upon which relief may be granted. Thus, the Motion to

Dismiss should be granted as to the claims lodged against the Beckham County Defendants in their official capacities.

### 2. Individual Capacity Claims

As discussed in further detail below, the claims against Defendant Jay in his individual capacity should be dismissed for failure to state a claim upon which relief may be granted. But the individual capacity claims against Defendant Bilbo should not be dismissed.

#### a. Failure to State a Claim upon which Relief May be Granted

Plaintiff was in the custody of the Beckham County Defendants as a pretrial detainee when his claims of deliberate indifference to a serious medical need arose. His claims, therefore, do not arise under the Eighth Amendment, but, rather, the Due Process Clause. "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995). A pretrial detention is one such relationship. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999); *Liebson v. N.M. Corr. Dep't*, 73 F.3d 274, 277 (10th Cir. 1996) ("it [is] clearly established that state officials had a duty to protect individuals whom they had taken involuntarily into their physical custody and control.)"

The "special relationship" doctrine imposes upon prison officials the responsibility to take "reasonable measures to insure the safety of the [detainees]." *Lopez v. LeMaster*, 172 F.3d at 759. "In fact, the due process rights of a person in [this] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). In the Tenth Circuit, a pretrial detainee's rights under the Due Process Clause parallel those of a convicted inmate's Eighth Amendment rights: "Pretrial

detainees are protected under the Due Process Clause rather than the Eighth Amendment. In determining whether appellant's rights were violated, however, this Court must employ an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez v. LeMaster*, 172 F.3d at 759 n. 2 (*citing Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)).

Prison officials violate the Eighth Amendment (or, in this case, the Due Process Clause), when they are deliberately indifferent to an inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Tenth Circuit has succinctly defined the two components of a claim based on deliberate indifference to a serious medical need:

> A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

In this case, Plaintiff contends he suffered a stroke after having been arrested and booked into the Beckham County jail. There is no doubt that a stroke constitutes a "sufficiently serious" medical condition to meet the objective component of a claim based on deliberate indifference to a serious medical need. Moreover, Plaintiff contends he tried unsuccessfully to convince Defendants to provide him with medical help. Of course, Plaintiff had not been diagnosed as having had a stroke because the stroke occurred after he was booked into the Beckham County jail where he received no medical care before his first appearance before the Beckham County

District Court. But Judge Roper, a layperson, readily recognized that Plaintiff had a serious medical condition when he appeared before her, and she immediately had him taken to a hospital for treatment and released him from custody on medical bond. Based on the facts before this court, Plaintiff has provided sufficient facts to state a plausible claim for relief. Therefore, the Beckham County Defendants' motion to dismiss based on Plaintiff's alleged failure to state a plausible claim upon which relief may be granted should be denied.

### b. Personal Participation

The Beckham County Defendants seek dismissal of Plaintiff's Complaint based on the Plaintiff's alleged failure to demonstrate their personal participation in the alleged constitutional violations. Defendants devote most of their argument to citing case after case repeating the well-known tenet that personal participation of a defendant is essential to holding the defendant liable for a civil rights violation.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (*quoting Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). *See also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

Plaintiff contends the Beckham County Defendants "refus[ed] to permit the administration of timely medical treatment" for Plaintiff's initial stroke." [Doc. No. 1] at 9. Plaintiff states Defendant Bilbo refused to provide medical care to Plaintiff based on her observation that Plaintiff "wasn't having any problems at booking" [Doc. No. 1] at 9. He further contends that Defendants Jay and Bilbo both refused to provide rehabilitative and occupational therapy when Plaintiff was returned to their custody after having suffered a second

stroke. [Doc. No. 1] at 10. Finally, Plaintiff alleges that Defendant Bilbo issued an order that Plaintiff receive no medical care during over three months after he he was remanded to the custody of Northeastern State Hospital and the date he was actually transferred there.

Plaintiff's allegations are sufficient to demonstrate Defendant Bilbo's personal participation in the alleged constitutional violations. The same is not true of Defendant Jay. Claims of personal participation on the part of Defendant Jay are conclusory and do not state a plausible claim against him based on personal participation.

### c. Qualified Immunity

The Beckham County Defendants contend they are entitled to qualified immunity because "Plaintiff failed to factually allege that [they] violated clearly established law, and that their actions were not objectively reasonable." [Doc. No. 9] at 21.

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citations omitted).

To determine whether the right was clearly established, a court must determine whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quotations omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quotations omitted). "The plaintiff is not

required to show, however, that the very act in question previously was held unlawful ... to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quotations omitted).

A pretrial detainee's right to be free of deliberate indifference to his serious medical needs is well-established, and any reasonable official would have understood that withholding treatment from a pretrial detainee who has suffered a stroke would violate that right. Moreover, as discussed above, Plaintiff stated sufficient facts to state a claim based on deliberate indifference to his serious medical needs, at least as to Defendant Bilbo. Therefore, Defendant Bilbo is not entitled to qualified immunity.

### d. Statute of Limitations

The Beckham County Defendants next seek dismissal of Plaintiff's claims as barred by the applicable statute of limitations.

Section 1983 claims are "best characterized as personal injury actions" and as a result, "the forum state's personal injury statute of limitations should be applied." *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). The applicable statute of limitations in this case is two years, as set forth in Okla. Stat. tit. 12, § 95(3). A determination of when a claim accrues, however, is a matter of federal law. *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987).

Generally, claims accrue and "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In particular, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (internal quotations omitted). The Tenth Circuit has also observed: "Since the injury in a § 1983

case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. This requires the court to identify the constitutional violation and locate it in time." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotations and citations omitted). Moreover, "the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact." *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985).

In this case, the Beckham County Defendants argue that the statute of limitations began to run some time before Plaintiff's first court appearance on September 10, 2013. Because Plaintiff filed his Complaint on September 10, 2015, they argue that any claims of wrongdoing taking place before September 10, 2013, are untimely. [Doc. No. 9] at 18.

Plaintiff, on the other hand, contends that his allegations of delay and denial of medical care include the period of time both before and after September 10, 2013, based on the fact that he was not diagnosed as having had a stroke until the Beckham County District Court ordered that he be taken to a hospital on September 10, 2013. Therefore, he argues, before September 10, 2013, he did not have sufficient knowledge that he had been injured by the Defendants' delay and refusal of medical care. [Doc. No. 11] at 14. The accrual date of Plaintiff's claim is a disputed question of fact not amenable to dismissal on the facts currently before the court, and the Beckham County Defendants' Motion to Dismiss should be denied on this ground.

## **RECOMMENDATION**

The Motion to Dismiss filed on behalf of the Director of the DOC and Defendant Patton [Doc. No. 10] should be granted. The Eleventh Amendment bars plaintiff's request for monetary damages against the Director of the DOC in his official capacity. Moreover, because Plaintiff is no longer in the custody of the DOC, his claims for prospective injunctive relief against the

Director of the DOC in his official capacity are moot. As for the individual capacity claims against Defendant Patton, Plaintiff's failure to allege personal participation on the part of Defendant Patton requires dismissal of the claims against him.

The Motion to Dismiss filed on behalf of the Beckham County Defendants [Doc. No. 9], should be granted in part and denied in part. The Motion to Dismiss the official capacity claims against these defendants should be denied for failure to state a claim upon which relief may be granted. The individual capacity claims against Defendant Jay should also be dismissed based on Plaintiff's failure to sufficiently allege personal participation on the part of this Defendant. The individual capacity claims against Defendant Bilbo should not be dismissed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by September 1, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation addresses all matters currently referred by the Chief District Judge.

ENTERED this 11th day of August, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE